5-24-1103 Vandalia Levee & Drainage District v. Keck Appellant, if you are ready, you may proceed. Thank you, Your Honor. May I please report, counsel? Not many people in the room. This is the sixth time that this case has been to the appellate court. Seven if you count that we got sued for taking, even though we never got an injunction to remove the levees. So today I guess I'll start with 2014, now that we finally have properly appealed the denial of proper injunctive relief. It was the granting of an injunction, but the judge, instead of following Exhibits 15 and 16 of the trial evidence, as remanded in 2012 by this appellate court, he used his understanding of natural law to decide that four 50-foot holes put into the 19,000-foot, that's five miles, of levees would return natural flow. It obviously has not returned natural flow, as we have $600,000 worth of damages in five years, when previously we had about that exact amount, 580,000 actually. I have a few questions.  All the levees involved here are on Pecan Island, is that correct? That's true. In fact, they're only on the perimeter. There are other levees on Pecan Island that are not part of causing the harm. Okay. They're further in. Now, with the settlement that Vandalia Levee and Drainage District made with the Keck… Justice Moore, I can't hear you. I'm sorry. Concerning the settlement… Did that help? Did that help? A little bit. Thank you. Okay. Concerning the settlement with the Keck family that the Levee District has already settled and been paid, is that correct? I would say that we settled with Fred Keck for $55,000. We took his last piece of property. But with respect to KLC, the people that Keck fraudulently transferred his property to in the middle of our case, with respect to KLC, we did resolve it. Pretty much immediately after this, court found that Arla's pendants took priority over the $6 million in mortgages that the bank gave. And when that decision came out, we were going to foreclose. And I had a fraud case pending against them for the shenanigans of transferring all the money. I'm just asking about the settlement. Right. So we settled for $580,000 in damages. The judgment was actually 565. But the judge had deducted $15,000, so I asked them to put that on there because it made the damages even when we went after Parrish. And so we settled for that. And then we got 9% statutory interest for over two years. Maybe it was three years. And we also got attorney's fees. And we dismissed the foreclosure action and the fraud action. Okay. The release says, and this is the settlement and release form. Right. That upon execution, the levy district is allowed to remove to natural ground the existing levies on Pecan Island for a distance of 2,500 feet. That's correct. So my clients were paying an additional $15,000 for them to hire a contractor to go in and remove the 2,500 feet of levies to make sure that it was done properly. It actually cost more than $15,000, but that's how we did that. Well, I'm sure that the settlement was done that way to make sure that there was no issue with the way they were removed. Right. Is that correct? That is correct. And we also recorded covenants on their deeds so that they can never rebuild any levies that are washed away. They can never rebuild any levies without a permit. Are there any levies left on Pecan Island that have not been removed? There are 19,000 feet of levies minus 200 feet of gaps left on the island. So there has been 2,500 feet of gap removed. Is that correct? It is correct, but it was not removed from the perimeter levies that this lawsuit is about. It was actually removed from levies that are on an old channel that's an inactive channel when the rivers split like this so that when Parrish's levies, 9,000 feet, are removed, then the water will flow through that island. It will not damage their land because, you know, we are the government, too, and it will allow the flow to actually get out and not back up on us. So the 2,500 feet removed are actually on the back levies that Mr. Lazzaretti's daddy put in a long, long time ago. Okay, I'm not understanding where the 2,500 feet is. Can you make it more clear where that 2,500 feet of levy is? Yes, and there's an affidavit in my motion to reconsider denial of the injunctive relief where I supply an affidavit from Randy Braun, who is the commissioner of the Vandalia Levy District, and he observed the work, he observed the staking, and he observed the removal to ground level and the engineering. And so where it is is when you start on, when you get to, you pass Parrish's land and now you're on KLC's land, here's the active river channel, here's the island of 1,000 acres, 300, I think, owned by Parrish. Then back here, before you leave KLC's land, there's 2,500 feet over here removed so that the water can flow through that island. Does that help? No, I need a map.  You are, I appreciate the effort. You know, I could put you to military service last night, but I don't think I have a map. The evidence that was heard about the damages, did it take into account the removal of those levees? Did the damages from the 2019 judgment? The removal of the levees on the Keck property. Removal of the levees on the Keck property? I'm assuming that the removal of those levees that were encompassed in this release would improve the flooding situation. Well, they will allow flow through the island as the Pecan Island perimeter levees wash away from all of the pressure of the river and also from us obtaining our injunctive relief. Since we have a motion, we had a 2020 motion pending, Your Honor put in a footnote that the titles were convoluted and maybe the court should ask us to consolidate our motions, so I consolidated the motions. That might have been a mistake since I could never get a hearing on my motions and they weren't the remanded motions. For five years, I couldn't get a hearing for injunctive relief. When we finally get a hearing for injunctive relief last year, the judge decided that I did not prove enough changed circumstances to entitle us to an injunctive relief. And that in fact, I was complaining about the same thing that was going on in 2014. Of course, I have $600,000 more in damages, which shows that the injunctive relief needs to be modified. And also, I have an engineering report from Brian Martindale with a 79-page affidavit. I have the transcripts of the testimony. When was that evidence taken? In 2018. We reopened discovery. That evidence was taken and your expert testified before the removal of the Keck levees, right? Yes. And the removal of these Keck levees would affect the remaining levees. It actually won't because they're on the old river channel that's dead. So these levees here, they're going to get hit by the river, and that's what will impact them. What we did was open it up so you could flow across the island once the parish levees are removed. So the levees that were removed were on the upriver side, is that correct? The island? Say it again, I'm sorry. Okay, 2,500 feet is about a half a mile, right? Yeah. Okay, and so the island is a huge area of length, right? 1,000 acres. Right. And so the levees that were removed consisted of about a half a mile, and what I'm wondering is on the flow of the river, was the levee that was removed upriver or downriver on the island? You see, it's really neither because it's on the dead river channel. So it would be down from Vandalia, that's why we have the stacked up, you know, the stacking of water that saturates our levees even in small storms, which has caused them to weaken, which is why they flow out. You see the photographs and the affidavit and the motion in 2020 and in the 2021 motion where we show, here are our additional damages, and we go through, this is how much we spent here on this levee breach that broke, this is how much we spent here, and so we have documented that. Have I answered your question? No, I'll try to examine the maps and try to get Mr. and your opposing counsel, I'll ask him to answer the questions I'm asking as best as he can. I don't know that he would understand. I don't understand what was done out there. They really didn't participate in any way. I understand that you're part of that, but I'm trying to understand and gather the facts of what's actually happened here. Well, we had a change in conditions from the point of view that we went in and removed 2,500 feet, half a mile at the end of the island so that the water could flow across it and not back up here. Okay, so that once the water flooded the island, it could escape. Exactly right, Your Honor. That's exactly what we did, is we gave the water an escape route, and it leaves about 2,500 feet when we get the 9,000 feet removed, and the water can flow through, and it would keep their property from being damaged as well. Okay, and how often, given the seasonal rainfall that we get, I assume the farmland wouldn't be valuable at all if it flooded every year and you could not put a crop out. Right, and you might recall from the 2020 decision that this court found that Mr. Keck had admitted that that land flooded, and it was a great big giant lake before he bought it. So it has been, in fact, Parrish admitted in January of 2009, in answer to the April 2008 complaint, that this has been subject to more than 20 years of continuous flooding. The island had been subject to it. They also admitted that they interfere with quiet enjoyment of property. Okay, did the evidence show at trial, and would the record show that it floods every year? I don't know that it would. I believe that, I have to go back and think, John Phillips has died, one of my witnesses, but I believe that his testimony was that it was about an average of every three to four years that they would lose their crops on the island because of excessive flooding. It may flood every year, but it wouldn't ruin their crops every year. Okay, you say three to four years. Does that mean that three out of four years they can get a crop? That seemed to be his testimony. I believe he even said that at some point to get over the old river channel, they actually conveyed the cone with a blower to get across that old channel. Okay, I think those are my questions. Okay. And I see you're already flashing me. I know I'm taking up a lot of time. I'll ask the presiding judge if he'll indulge me with a little time. You can take some more time. Go ahead. Well, I guess I have five main issues, so I need an injunction. I've needed an injunction since we started this case. We proved our case at trial. We showed with and without levees. We had a demonstrative table we got from ID&R. We did all the modeling. We did three sets of modeling. The appellate court made its decision. It relanded for injunction and damages. We have not gotten any of the injunctive relief and damages. We didn't even get a dime of until this court decided the fifth appeal on the Liz Pendens, and they settled with us. And then we got the damages that were from 2003 to 2014. I have been asking for damages post-2014 for a long time. In 2020, this court said, you have to consider the merits of her request for additional injunctive relief. Five years later, I got the merits considered, and the judge decided that I did not provide enough information of changed circumstances. Several times in the record he says, well, you probably showed you were harmed. You probably showed that this still harms you, but it's continuing harm, and continuing harm is not a changed circumstance. So we've provided- Parker was originally the judge. Is that correct? Parker, well, originally I had Judge Lackey. Then he retired, right? I don't think Judge Parker has retired. Yeah, I believe he has retired. And then who tried the case? Well, we've had Parker since the 2015 remand, the second appeal. And then we had, well, we had Mittendorf on the 2014, and then he retired. So on the remand, we had Parker, and then we had Rooneyke is our last judge. And this case was filed in 2008? It was filed in 2008. 17 years. 17 years, and in December of 22, I filed a motion for the last amount of damages that we had suffered from 2015 to 2020, and Parrish never filed a response to that. The judge gave them an opportunity to file a response. I believe that was late as well. But 600 days they file a response, 570 days late. We're entitled to default judgment on that, and we provided verification, by the way. It's a verified pleading, therefore their response should have been verified. And instead, they file a response that says, it's just impossible to respond to that motion, and we're not required under the Code of Civil Procedure to respond to it because we're not liable. And we hear the constant refrain, we're not liable. In fact, in 2014, in 2013, they filed a document, which I found when we went through the record, saying no proximate cause has been proven here when the appellate court, in the opening statement of the first appellate decision, says we find proximate cause. So we know that Parrish's levies and KLC's proximately caused the 1.16 in damages that we have now proven uncontested. They've never contradicted any facts that we presented. Their guys were opposed to. They did a HEC-RAS model. Why didn't they present that? Because we're right. The gaps did not return flow. And based on the new modeling from 2017, we know that based on the river conditions, the conditions of the levies, the survey, we know that now, instead of getting backup of 3.2 feet, like we were getting as proved at trial, we're getting 3.8 feet. That's almost four feet of backup on our levies during relatively short events, like two-year storm events, we're getting this complete saturation of our levies. And they're failing. And you can see the pictures in the 2020 and 2021 motions where we show here's what two miles of levy blowouts look like. In fact, it was within four months of this appellate court's decision, and I still couldn't get a hearing on my injunction motions for four years, five years. And so we need our injunctive relief. We've proven our additional damages. They are not the same damages as KLC paid. KLC paid through 2014. These are damages from 2015 to 2020. And those damages are owed by the non-settling party. And they just happen to be half of what the damages are, so you know that it's reasonable and fair. And we should get default when you don't respond to our motion for 600 days. In addition to that, I filed a motion for sanctions. I don't think I've done that very often in my life, maybe three times in almost 40 years, but it was time. I had four started documents in my files for years and years, because it's pretty hard to take that they come in and say the appellate court was wrong and they get away with it. I objected to those witnesses as being incompetent. Their testimony should not have been allowed. We had the exhibits from trial. You have an appellate decision. Implement it. And what is the implementation? Remove all the perimeter levies that you put up in the last five years. In fact, that exhibit 16 shows all the levy stretches put up in the last five years. That would be an interference with our prescriptive easement right that we had for 40 years that this court found in that 2012 decision. So you've interfered with flow. That's our second cause of action. You've interfered with our prescriptive easement, and we know it's a nuisance because the farmers that we represent as a governmental entity have suffered millions of dollars in damages. That's not what our house is about, but that's why we're here. We maintain our levies so that the farmers can protect their cropland. That's what this is about, protecting cropland. Instead, Keck and Parrish put these levies in, and you know that Parrish approved the levies because this court found, based on the evidence that Parrish presented at the last appeal, well, two appeals ago, that they, in fact, that when the – I totally lost my train of thought there. Now I'm asleep. But we know that Parrish knew about this lawsuit. They knew about the nuisance. There's an affidavit from Mr. Lazzaretti saying, I took over, you know, daddy's trust in 2005. That's when I found out there were leases. He met with Keck. He reused the lease in November of 2008 after being sued in April 2008. And under the restatement of torts, never made my radar, but it made this court's radar. And under the restatement of torts, they have a duty to abate a known nuisance once they change their leasehold. And they took possession for three months. But they have a duty under Supreme Court case law that I've briefed thoroughly for you. All right, counsel. I've given you quite a bit of time. Thank you so much. And I do have one final question. Okay. How much of Peaktown Island is owned by the Kecks and how much is owned by the Parrish? Well, Keck's in a nursing home, so KLC would be the emerging. I'm talking about the Keck owners in the Parrish homes. Right. So it was all the Keck owners, right? Right. So I believe that Parrish has about 270 acres at the top of the island. And they are the levees that are hit first. They're the levees that back up on us first. That's why we strategically thought if you take those levees out, instead of punching holes way down here, how long am I going to litigate? Another five years? You punch holes down here. Well, the water's still stacking up on us because it hits their 9,000 feet first. So we opted for that. Okay. My question is how much is owned by each apartment? Kecks and Parrish. I believe KLC, Kaskaskia Land Company, owns 700 acres. And I believe that Parrish owns just under 300. Maybe just over. 70% per person. Is that right? About right. Okay. But Parrish's levees get hit first and stack the water up on us first. Thank you. Any questions? No questions. Thank you. Thank you.  All right. I believe. Before I start telling you a whole bunch of things that you may or may not want to hear, I suppose I should just ask, do you want to follow up with me about any of the things that you were asking counsel about? I'll just give you an opportunity. First, you need to say your name for the record. Well, Ted Graham here for Parrish Holdings. And I don't want to interfere with the presiding role here. We've been around a long time, so I think you can both speak. In any event, Your Honor, I just thought I'd give you the opportunity. Well, yes. State your name for the record. Sure. Ted Graham here for Parrish Holdings, Your Honor. Okay. Well, you've heard all my questions about the levees, the dates, ownership. Do you know anything about any of those things? And if you do, please share with us what you know. Judge, I don't really know a whole lot about the mechanics of the release and how the removal of the levees plays out on the island because we weren't a part of that discussion. So I don't know how it works. I believe Parrish What does that figure into the alleged damages that the levee district claims to be still owed? Well, it depends on what damages we're talking about. What happened in this case was kind of unusual, and I don't know that I would have proceeded that way, but that doesn't make it right or wrong or indifferent, right? The matter was proceeding along towards a trial on liability issues that would have decided whether an injunction was appropriate or not. Parrish filed a motion for summary judgment that was granted in the trial court. The plaintiff took that up on appeal. While that motion was up on appeal, plaintiff went ahead and tried the damages case against all of the remaining defendants. That resulted in a verdict against all of the remaining defendants of approximately $565,000. That would have considered damages that accrued to the plaintiff for the period of time, for a period of time prior to the time of trial, prior to 2014. As far as I'm aware, it didn't consider anything that happened after 2014, right? But there was a judgment entered in 2018 or 19, whatever the year, 18, I think, where the judgment for damages was awarded. There was a judgment for damages awarded against all of the remaining defendants except Parrish of $565,000, plus or minus. And I'm going to interrupt you. Go ahead. Procedurally, where was the summary judgment at that point? You said there was a summary judgment, Parrish's motion. Parrish filed a motion for summary judgment before that that was granted, and it went up on appeal. And then at that point, when the damages judgment was decided, what was the stats? Parrish's summary judgment went up on appeal. Okay. Right? So that issue was decided without Parrish's involvement. It included all of the damages that the plaintiff was entitled to recover at that point in time. Under the single recovery rule, when the plaintiff went into court and tried to prove that it was entitled to damages, it would have to prove whatever it was it was entitled to in the past, whatever it was entitled to was accruing at the present time, and whatever it anticipated it was going to be entitled to going forward into the future. But all of its damages were going to have to be presented at that point in time. And they did that. So a judgment was rendered in favor of the plaintiff for the $565,000 plus or minus. And then after that, this court reversed the summary judgment and sent Parrish back into court to have a trial on damages. The injunction issues were decided in 2014, and Parrish was involved in that process. The evidence of that matter was heard at the time. It was decided at the time. It went up on appeal. It came back down. There was an injunction that was entered that required all the parties to do certain things with respect to the levy system on the island, and all of the parties participated in that and completed that work. So the injunction was complied with at the time. So when the matter came back from this court on remand to the trial court, all of the Keck and Keck defendants' issues had been decided, except the possibility that there could have been a modification of the injunction going forward. But all of the issues related to the 2014 injunction had been decided relative to Keck and the Keck defendants. The only thing that remained to be decided against Parrish was the amount of damages that might have accrued against it because of things that it did on the island. Now, it has a unique status in this litigation because Parrish took this land over after Keck constructed the levy. So Parrish didn't do anything to construct or modify or maintain any of the levies on the island. That's what the evidence was in the case. The question for Parrish was whether Parrish knew at the time it renewed a lease with Keck that there was a nuisance being created by the levies on the island. And this court considered that issue. This court considered that issue specifically on the appeal of Parrish's summary judgment where it indicated the nature and character of Parrish's knowledge of the levies and their effect on Vandalia Levy District's property remains an issue as the institution of a lawsuit does not determine that there was a nuisance. So the question at the time Parrish came back on remand to the trial court, everything with respect to Keck and Keck defendants was decided. Parrish's issue was whether it owed any money. Now because Keck's damages had already been decided and this is a single indivisible injury that's being claimed, Parrish's liability for damages was capped at the amount of that judgment, $565,000 plus. So the question now is to the trial court, what of that $565,000 is owed by Parrish? Now I hope that gets around to answering your question, but the bottom line with that is we never had a trial on the issue. The issues that came up at that point and after that were that the plaintiff sought relief from the original 2014 injunction. And there was two ways that the plaintiff could have done that, and that plays out on both sides of the fence with respect to liability and with respect to damages. If they're entitled to a modification of the injunction then all of the parties may be, and they grant it, the court grants it, then maybe all of the parties owe an additional amount of money because of damages that have accrued since 2014 and on into the future to the point where the plaintiff can compute their loss. If the court denies that relief, then they're not entitled to any additional damages because the issue can only be resolved by the fact that one or more of the defendants did something on the land that changed the circumstances and created a necessity for a modification of that injunction. I mean, that results with determinations that have to be made on liability and damage issues. So Parrish comes back. We know that we have to have a trial on the issue of damages. We're prepared to have a trial on the issue of damages. We've disclosed expert witness. We've done all that kind of stuff. And the next thing we find out is that the plaintiff has settled. Now, as far as the plaintiff's settlement is concerned, I don't think it makes any difference at all whether the amount of their settlement accrues because of any particular element of damage. We know that there was a verdict against him of $565,000. We know that the plaintiff is claiming but is not yet entitled to damage that has accrued since 2014. And we know that they settled the case for $915,000 cash plus whatever land they got from CAC. The other thing we know is that Parrish's liability for damages is capped at $565,000. Now, under 740 ILCS 100-2C, Parrish is entitled, when they settle that case, Parrish is entitled to an offset against his liability for damages in the amount that was actually paid as consideration for the release that the other parties got because it's a single, inseparable, indivisible injury. So we have a $565,000 cap. I mean, Parrish's liability might have been zero. It might have been something in between zero and 565, and it could have been 565. But it could never have exceeded 565. And Parrish is, in fact, entitled to a $915,000 set-off against that $565,000 damage award. So there isn't any way they'd be entitled to a $915,000 set-off when the principal amount is not $915,000. Because it included attorneys fees and interest. Because of the nature of the statute. 740 ILCS 100-2C provides that when a release or covenant not to sue or not to enforce a judgment is given in good faith to one or more persons liable in tort arising out of the same injury, it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant or the amount of the consideration actually paid for it, whichever is greater. So the amount of the consideration that was paid for the release was $915,000. And that is the greater of the two amounts of money. So it's entitled to an offset of that $915,000. Now, there isn't any way that 565 is ever going to be more than 915. So it's entitled to a full offset for whatever damages had accrued during that period of time. And that period of time would have been the parties' respective liabilities up until the time the injunction was entered in 2014 and the parties complied with the terms of the injunction and remediated the property. Because, in fact, they did do that. I mean, they relied on the – everybody relied on the court's judgment. Nobody appealed it. Nobody filed a motion for reconsideration. The defendants just went out and did what the judge told them to do and cut the gaps in the levees and let the water flow across their land. So that's the damages issue. As far as the liability issue is for a modification going forward, there's two ways the plaintiff could have obtained some kind of relief in that regard. One of them would have been to file a motion for reconsideration because it believed that the trial judge's determination – the scope of the trial judge's determination and its injunction wasn't broad enough to accommodate the rights and remedies that Vandalia Levy District thought were necessary under the circumstances. They didn't file a motion for reconsideration and they didn't take an appeal, either one. They just let the parties go out and perform. And they did – the defendants together – well, separately, but all the defendants went out and actually did what the trial judge told them to do. Now, what the plaintiff did do was to file a motion to modify the previous injunction, the injunction that was entered in 2014. The difference between a motion to reconsider and a motion to modify is pretty dramatic. The motion to reconsider says to the trial judge, I don't like the judgment that you entered. Here's why I don't like the judgment that you entered. I need you to change it so that it accommodates my rights and interests, and we'll move forward from there. A motion to modify, on the other hand, accepts what the trial judge did. It says all of it is whatever it is. Everybody's done whatever it is that they've done, but now there are changed circumstances that require some additional attention. And the question then becomes, what are the changed circumstances? Now, the plaintiff, in this case, filed a motion. They had a hearing on the motion. The motion was denied. They filed an amended motion to modify, and it was denied because there was no allegation in the motion. This isn't a proof issue. It's a pleading issue. There was no allegation in the motion that suggested any change in circumstances of the levies on Pecan Island that would have been actionable. And this court recognized that on its last appeal in this case. When it stated, we recognize the circuit court's inherent authority to modify a final and permanent injunction is limited to determining whether changes in applicable law or facts since the rendition of the judgment warrant a modification of the terms of the injunction. It does not include the power to inquire into the propriety of the judgment as to conditions existing at the time of its entry. So the trial judge, when they looked at the motion to modify, said, you haven't alleged anything other than the conditions that existed at the time of its entry and the fact that it's not sufficient in scope. Therefore, I have to deny your motion. It wasn't a motion to reconsider. So they filed an amended motion, and they took it first as a motion to reconsider the denial of the earlier motion, and then when that motion to reconsider was denied, they took it as a motion to modify on its own, and the trial judge made the same finding, that it didn't allege anything that would indicate a change in the condition of the levies on Pecan Island that would warrant or necessitate any additional relief. So its motion to modify was denied. As far as the liability issue with respect to modification or alteration of the levies, they're not entitled to any relief against Parrish Holdings because they've never proved that Parrish Holdings had actual knowledge of the fact that there was a nuisance on the property. And if I could just finish the sentence, they're not entitled to any further relief with respect to the damages because they've already settled the case for more than the case was worth. I appreciate your time, Your Honor. Any questions? No questions. Rebuttal. First off, the trial court required me to do a damage trial against KLC only, so I had no choice while the motion for summary judgment was up on appeal, but I didn't just appeal that Parrish was given summary judgment. I also appealed that I was being denied injunctive relief based on three motions, one on nuisance, one on prescriptive easement, and I also had a motion pending for $900,000 in damages that this court remanded for a decision. So when he says to you, we know that they're not entitled to additional damages and that liability is capped, that is a lie. We do not know that. What we know is that I presented in 2022 damages through 2020, and they didn't respond to it in any way. They didn't counter it. They didn't respond. They said it was impossible to respond because they're not liable. This court has found them liable twice. You've remanded it for a determination of what that liability is, and they consistently say, not us, not us, it's not us, and they also started claiming the appellate court was wrong in 2014, which is what has exacerbated this litigation and allowed it to last 17 years where a party could still not have their relief and still be being damaged. Levy blowout's $100,000 after a remand, and so when he says, well, we know all of that was determined, no, it wasn't. Damages aren't capped at 565 because this court overturned that. That's specifically overturned in the 2020 decision. This court said we're remanding it for consideration of the motion to modify, which there were three motions, and we are considering damages. It is remanded for damages including against Parrish because this court went into an elaborate 20-page analysis of restatement of torts and how as soon as Parrish had knowledge, they become liable for damages. We know they had knowledge in 2008 because they got sued. We know they had damage in 2008 when they put their lawsuit into their lease renewal in November 2008. We know that in 2009 January, they finally got around to answering the complaint after I filed a motion for default judgment, and in that answer they admitted nearly all the allegations of the complaint, including that they had interfered with quiet enjoyment of property and that the island had flooded consistently for more than 20 years and that they knew it in advance and that the flooding occurred by the consent of the people. I quote you all of the paragraphs in my complaint that they have admitted to that show you this. So as far as the damages are capped, that is not true, and they didn't answer the motion, so they are defaulted. They should be defaulted for not answering, and when you default them, you still have to prove, well, we have an affidavit that shows you all of our damages. It tells you what months we spent, how much, and where we were repairing it, and it has photographs of the blown-out levees. When it tells you, oh, we all implemented the injunction and she didn't appeal, it didn't get appealed. Well, KLC appealed it. They appealed their liability for it. And the fact that we don't ask for reconsideration, I filed a 1401 petition that this Court said I didn't diligently pursue because you don't understand how hard it was to get a hearing in front of Judge Parker. Four years, I still couldn't get another hearing after the 2020 remand. So I did file a motion to reconsider, so to speak, and I'm not obligated to. We did not present the damages at that trial. We presented what Judge Parker would allow, which was only through injunctive relief of 2014. We know that injunctive relief did not work. They don't contest that it didn't work. They don't present you evidence that their guy shows that it worked. I present you evidence that their guy admits that when he ran his HEC-RAS model, he confirmed Martindale's model. It showed that the 450-foot gaps did absolutely nothing to return flow. But their position is, and it still is, they're not the proximate cause of our damages, so therefore it doesn't apply. But this Court already found that they're the proximate cause of our damages, and they don't get to relitigate this. Yet every time we're in court, they're relitigating that issue. The current pleadings from 2024 show you that they keep saying the same thing. We're not liable. We're not liable so we don't have to answer pleadings like every other lawyer has to follow the Code of Civil Procedure. We're not liable so we don't have to. And he tells you the only thing left was damages and a trial for damages. No, we still don't have our injunction to stop ongoing damages. That's the main issue, even though we have a million dollars' worth of damages. And when he says, oh, we're entitled to have a set-off, you're entitled to a set-off of 1.16, which is a set-off of 580, and you owe 580. And, by the way, the 915, if that is the proper set-off, which it is not because, as you pointed out, interest and attorney's fees, well, if it is, well, then there's still $245,000 left. What about that? Well, he says it's capped at what Judge Parker did. It's not capped at what Judge Parker did because you guys overturned that capping. That was that interlocutory appeal. And, by the way, in the motion for sanctions, I showed you all of the times that they lied to the court, including when they told the court in June of 2023 the only thing pending, the only thing you needed to stop is a trial on damages. Really? Because I have a motion for damages coming that you haven't contested in any way. And I'm still trying to get my injunctive relief, which they tell the court is not pending. It is pending. The court's pending. I'm here because they denied my motions. And, by the way, the 2020 motion was dismissed on a 2-6-15 motion for failure to state a cause of action upon which relief could be granted. I'm not kidding. It's a remanded issue for consideration on the merits. I put together this definitive motion with all the evidence, and it's dismissed for failure to state a cause of action. So I amend. It's hard, Judge. Please read everything, because you guys didn't ask questions that, really, you might want to ask. Thank you, and I'm sorry this went so fast. Thank you so much. We will take this matter under advisement and issue a ruling in due course. Thank you.